# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STATE OF INDIANA, et al., | ) | |
| | ) | |
|   Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | **CAUSE NO. 1:13-cv-1612-WTL-TAB** |
| | ) | |
| INTERNAL REVENUE SERVICE, et al., | ) | |
| | ) | |
|   Defendants. | ) | |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on the Defendants' motion to dismiss (Dkt. No. 36). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to the extent and for the reasons set forth below.[1]

## I. THE AMENDED COMPLAINT

The State of Indiana and thirty-nine of the state's school corporations bring this suit challenging aspects of and a regulation implementing the Patient Protection and Affordable Care Act ("ACA"). They allege the following facts relevant to the issues raised in the instant motion to dismiss.

"The primary goal of the ACA is to create a health insurance system that provides nearly universal coverage while reducing health care costs." Amended Complaint at ¶ 145. One of the means the ACA uses to further that goal is what is commonly referred to as the "employer mandate." Pursuant to the ACA, a large employer as defined by the Act (which each of the Plaintiffs is or, in the case of one Plaintiff, would be but for efforts to avoid the requirements of

---

[1]The Court recognizes that the Plaintiffs have requested a consolidated oral argument on the instant motion and the Plaintiffs' motions for summary judgment. The Court has determined that oral argument is not necessary with regard to the issues addressed herein. Accordingly, that motion (Dkt. No. 50) is **DENIED**.

the ACA) is required either to offer health insurance that provides "minimum essential coverage" to all of its full-time employees (as defined by the Act) or be subject to a "shared responsibility payment" for failing to do so as set forth in 26 U.S.C. § 4980H. The Plaintiffs aver that each of them offers minimum essential coverage to the majority of its employees, but that each has employees who would be defined as full-time by the Act but who are not eligible for health insurance because they are considered part-time under the Plaintiff's personnel policies (hereinafter referred to as the "Affected Employees"). The Plaintiffs further aver that they do not wish to offer the Affected Employees health insurance because of the cost of doing so.

The shared responsibility payment provision is triggered as to an employer when at least one of its full-time employees purchases insurance from an "American Health Benefit Exchange" ("Exchange") and applies for and is granted a premium tax credit or cost-sharing reduction (hereinafter referred to collectively as a "Tax Credit").[2] Some states have established insurance Exchanges for their residents ("State Exchanges"); others, including Indiana, have not. The Secretary of Health and Human Services is required to establish an Exchange ("Federal Exchange") in any state that does not establish its own, 42 U.S.C. § 1804(c), and has done so in Indiana.

The eligibility requirements for a Tax Credit are set forth in 26 U.S.C. § 36B; one of them is that the individual has enrolled in a qualified health plan "through an Exchange established by the State under section 1311 of the [ACA]." 26 U.S.C. § 36B(c)(2)(A)(1) (defining "coverage month" for which a Tax Credit can be allowed). The Plaintiffs argue that this provision of the ACA and others limit the availability of Tax Credits to individuals who

---

[2]The amount of premium tax credit or cost-sharing reduction (which are two different ways of reducing the cost of health insurance premiums to an individual), if any, an individual will be entitled to depends on a variety of factors, including the individual's family size and income.

enroll in State Exchanges; accordingly, they argue, there should be no consequence to them if

some of their employees purchase insurance from a Federal Exchange and receive a Tax Credit.

In other words, the Plaintiffs allege that by deciding not to create a State Exchange, Indiana

insulated its employers from the employer mandate by eliminating any consequence for choosing

not to provide ACA-compliant health insurance to their employees. *See* State's Response at 3

(Dkt. No. 38 at 14) ("[I]f no federal subsidies are available in a State because the State has not

established its own Exchange, employers in that State will not be subject to the Employer

Mandate's tax penalties. Indiana has not established its own Exchange, so by the terms of the

ACA Indiana employers should not be subject to the Employer Mandate penalty if they fail to

provide sufficient health insurance coverage to full-time employees."[3]).

The Defendants disagree with that reading of the ACA. The Internal Revenue Service

("IRS"), as part of its role in implementing the ACA, promulgated a regulation ("the

Regulation") in which it defined the term "Exchange" for purposes of determining the eligibility

of a Tax Credit as including both State Exchanges and Federal Exchanges, thus making the Tax

Credit available to eligible individuals regardless of whether they purchase insurance from a

State Exchange or a Federal Exchange. 26 C.F.R. § 1.36B-1(k) (incorporating definition found

in 45 C.F.R. § 155.20).

The Plaintiffs in this action allege that the Regulation's definition of "Exchange" creates

a conflict with the statutory text of the ACA and will subject them to shared responsibility

payments that are not authorized by the ACA. Accordingly, in Count I of their Amended

---

[3]This statement appears to be based on the assumption that all Indiana employers employ only Indiana residents or, more accurately, only residents of states that do not have State Exchanges. This assumption is clearly incorrect—Kentucky has a State Exchange, and there are undoubtedly Kentucky residents who work for Indiana employers. As this assumption is not relevant to the issues raised by the instant motion, the Court need not address its import at this juncture.

Complaint, the Plaintiffs assert a claim pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, arguing that the IRS exceeded its statutory authority and/or abused its discretion when it enacted the Regulation. In Count II, they allege that applying the employer mandate to States and their political subdivisions violates the Tenth Amendment, either because it is a tax that violates the doctrine of intergovernmental tax immunity or, if it is not a tax, because it impermissibly interferes with the residual sovereignty of the State of Indiana. The Plaintiffs make the same allegation in Count III with regard to certain reporting and certification requirements the ACA imposes on employers. They assert in Count IV that the reporting requirements cannot be severed from the employer mandate. Finally, in Count V, the Plaintiffs allege that the Federal Government is estopped from imposing any assessable payments on employers for noncompliance with the employer mandate in 2014 because the Department of the Treasury and President Obama have announced that its implementation will be delayed until 2015.

## II. DISCUSSION

The Defendants advance several grounds in support of their motion to dismiss this case, each of which is addressed, in turn, below.

### A. Count I: Validity of the Regulation

The Defendants argue that Count I of the Amended Complaint must be dismissed because, for a variety of reasons, the Plaintiffs lack standing to challenge the Regulation. As the Supreme Court explained recently:

> Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process. The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal citations and quotation marks omitted). "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* "The party invoking federal jurisdiction bears the burden of establishing standing. Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 2342. In other words, because the Defendants have raised standing in a motion to dismiss, at this stage the Plaintiffs must only show that there is a plausible basis for each element of standing. *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### *1. Doctrine of* Parens Patriae

The Defendants' first standing argument is easily disposed of. The Defendants argue that the State's standing to bring this suit cannot be based on the doctrine of *parens patriae*. The State agrees; indeed, it must agree, because "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 (1982) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("While the State, under some circumstances, may sue in that capacity for the protection of its citizens, it is no part of its duty or power to enforce their rights in respect of their relations with the Federal Government. In that field it is the United States, and not the State, which represents them as *parens patriae*.") (citation omitted)). Accordingly, to the extent the Plaintiffs

have standing to challenge the Regulation, that standing must be based on something other than the quasi-sovereign interests that may only be asserted by means of a *parens patriae* action.

### 2. Injury-in-Fact Requirement

The Plaintiffs allege that they have standing to sue in their capacity as employers because the employer mandate affects them in that capacity. The Defendants recognize, as they must, that a State and its political subdivisions may sue in their capacity as employers. *See, e.g., Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601-02 ("[L]ike other associations and private parties, a State is bound to have a variety of proprietary interests. A State may, for example, own land or participate in a business venture. As a proprietor, it is likely to have the same interests as other similarly situated proprietors. And like other such proprietors it may at times need to pursue those interests in court."). However, the Defendants argue that the Plaintiffs lack such standing in this case because the possibility of being subject to a shared responsibility payment in the future is not sufficient to satisfy the "injury in fact" requirement. Specifically, the Defendants argue that the Plaintiffs can only speculate that they will ever be subject to a shared responsibility payment pursuant to § 4980H because "the likelihood of a Section 4980 assessment will turn in part on the future actions of these plaintiffs' employees, namely, whether those employees obtain coverage under a plan offered in the Exchange, and whether those employees receive premium tax credits to assist with the purchase of that coverage" which, in turn, will depend on various circumstances, such as the employees' income, tax filing status, and eligibility for other coverage. Defendants' Brief at 19 (Dkt. No. 37 at 29).

The injury-in-fact requirement "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List*, 134 S. Ct. at 2341.

An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur."

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013)). In this case, there is no doubt that the Plaintiffs have a personal stake in the outcome of this litigation—the avoidance of very large shared responsibility payments. The Plaintiffs allege that they have in the past—and would still, but for the Regulation—have (between them) hundreds of employees who work more than 30 hours per week on average and therefore are defined as full-time under the ACA, but who were not entitled to health insurance under the Plaintiffs' personnel policies because they did not satisfy the relevant Plaintiff-employer's definition of full-time (previously defined as the "Affected Employees").[4]

Only one of the Plaintiffs needs to have standing in order for this Court to have jurisdiction over the Plaintiffs' claims. *Korte v. Sebelius*, 735 F.3d 654, 667 n.8 (7th Cir. 2013) ("Where at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not."). Therefore, the question is whether the Plaintiffs have alleged facts that show that—absent any changes by the Plaintiffs made in response to the Regulation[5]—it is plausible that at least one of the hundreds of Affected

---

[4]For example, the State of Indiana defines a full-time employee as one who works at least 37.5 hours per week. Therefore, state employees who work at least thirty but less than 37.5 hours per week are Affected Employees, defined as full-time by the ACA but not by the State.

[5]In fact, the Plaintiffs have made substantial changes because of the Regulation in order to minimize the number of Affected Employees that they have; for example, many of the Plaintiffs have reduced the number of hours worked by employees in certain positions to under thirty. The cost of making those changes is not relevant to the standing analysis, however, because a plaintiff cannot "manufacture standing" by taking preventative measures if they would not have had standing but for those measures—in other words, the cost of preventative measures cannot be the basis for standing if the risk of harm that is being prevented by those measures

Employees would obtain insurance from the Federal Exchange and apply for and receive a Tax Credit. If that were to happen, the Plaintiff who employed that employee would be subject to a shared responsibility payment of approximately $167 per month for each of their full-time employees.

In *Lujan*, the Supreme Court noted:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction— and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict; and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.

*Lujan*, 504 U.S. 555, 561-62 (internal citations and quotation marks omitted). The Defendants argue that this "substantially more difficult" standard applies here, and the Plaintiffs have failed to satisfy it. The Court disagrees, for two reasons.

---

would not have sufficed to establish standing. *Clapper*, 133 S. Ct. at 1151 ("[A]llowing respondents to bring this action based on costs they incurred in response to a speculative threat would be tantamount to accepting a repackaged version of respondents' first failed theory of standing."). Neither can a Plaintiff lose standing by taking effective preventative measures, however, if those measures have caused it to do something it otherwise would not have done. Therefore, in considering the Plaintiffs' standing to challenge the Regulation, the Court has considered the facts as they would have existed without the preventative measures already taken by the Plaintiffs to avoid being subject to shared responsibility payments.

First, while it is literally accurate to assert that the Regulation challenged in this case regulates someone else—individual taxpayers—and not the Plaintiffs, the Court believes that view is too narrow. The Plaintiffs, as employers, are directly regulated by the ACA, and the Regulation directly affects the manner in which the ACA is (or is not) applied to the Plaintiffs. In *Lujan*, the legislative scheme in question did not govern the plaintiffs in any way; the law in question did not require the plaintiffs to do anything. Instead, the plaintiffs asserted that the failure of the challenged regulation to require *others* to do something would affect them. Here, in contrast, the Regulation defines a term that is used in the part of the ACA that is directly applicable to the Plaintiffs. The Plaintiffs are not simply third parties who may be affected by the regulation (or non-regulation) of others; they are squarely within the universe of those regulated by the ACA.[6]

Second, the Defendants argue that the Plaintiffs, like those in *Lujan*, cannot demonstrate that they will suffer injury here because whether they become liable for shared responsibility payments depends on the actions of the Affected Employees, which they argue are the type of "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict" that doomed standing in *Lujan*. This argument ignores a critical part of the ACA, however: the individual mandate. The Affected Employees' decisions whether to obtain health insurance is not "unfettered"; at least some of them will be required by the ACA to obtain health insurance or face financial consequences of their own. And the Court in this case easily can predict that it is substantially likely that at least one of those employees will comply with the individual mandate

---

[6]For this same reason, the Court rejects the Defendants' prudential standing argument, which also is based on the Defendants' characterization of this suit as involving only the tax liability of absent parties, without recognizing the likely direct economic effect on the Plaintiffs themselves if the Regulation is enforced.

by purchasing insurance on the Indiana Exchange (assuming, as the Court must at this stage, that the Tax Credits will be available) because the availability of Tax Credits for individuals making less than 400% of the federal poverty guidelines makes that a particularly economical way to obtain coverage.

The Court finds that the Plaintiffs have satisfied their burden of demonstrating "injury in fact" at this stage of the litigation.  It is indeed plausible that at least one of the Affected Employees will (1) be subject to the ACA's individual mandate (or simply wish to obtain health insurance); (2) comply with the individual mandate (or obtain the desired coverage) by purchasing health insurance on the Indiana Exchange; and (3) apply for and receive a Tax Credit for doing so.  That is all it would take for the Plaintiff-employer to be injured.

### 3. Redressability Requirement

Next, the Defendants argue that the Plaintiffs have not satisfied their burden of showing that it is likely that their injury will be redressed by a favorable ruling because the Affected Employees are not parties to this case and therefore will not be bound by this Court's ruling. Specifically they argue that even if the Plaintiffs win on the merits and obtain the relief they seek—an injunction prohibiting the IRS from awarding Tax Credits to individuals who obtain insurance coverage from a Federal Exchange—that would not stop any of the Affected Employees from "bring[ing] their own claim seeking the award of the tax credit."  Defendants' Brief at 21 (Dkt. No. 37 at 31).  But just articulating the argument in this way demonstrates its falsity:  because only the IRS can grant the Tax Credits, an injunction prohibiting it from doing so would prevent the Plaintiffs from suffering the injury at issue in this case.  The Defendants appear to have conflated the potential for the IRS to be subject to conflicting rulings by different

courts[7]—which, of course, exists in any case challenging the validity of a statute or regulation—with the redressability requirement.  In this case, the relief sought by the Plaintiffs would fully insulate them from the injury they seek to avoid by this suit, barring reversal by a higher court (or perhaps, at least temporarily, a contrary ruling by another court).  In each of the cases cited by the Defendants on this issue, that was not the case.[8]  In *Lujan*, the Court held that the injunction sought by the plaintiffs was not likely to bind the various funding agencies that would have to act to redress the plaintiffs' asserted injury.  In both of the other cases cited by the Defendants in their opening brief, a second lawsuit against a different defendant would have been necessary to redress the plaintiffs' injuries.  *See University Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438 (D.C. Cir. 1999) (plaintiffs would have to file second suit against drug manufacturers to obtain retroactive discounts); *Comite de Apoyo a los Trabajadores Agricolas v. U.S. Dept. of Labor*, 995 F.2d 510, 514 (4th Cir. 1993) (even if plaintiffs succeeded in action against Department of Labor and obtained declaratory judgment that the DOL erred in approving their wages, they could only obtain the additional wages they were owed from their employer, who was not a party and would not be bound by declaratory judgment).  And in *Urban Health Care Coalition v. Sebelius*, 853 F. Supp. 2d 101, 109 (D.D.C. 2012), cited by the Defendants in their reply brief, the court held that an injunction against the defendant, the Secretary of the Department of Health and Human Services, would not redress the plaintiffs' asserted injury

---

[7]This is, of course, more than a possibility in this case; conflicting rulings by Courts of Appeals already have been issued regarding the Regulation, with one circuit rejecting a challenge to it, *King v. Burwell*, ____ F.3d ____, 2014 WL 3582800 (4th Cir. July 22, 2014), and the other remanding to the district court with instructions to vacate it.  *Halbig v. Burwell*, ___ F.3d ___, 2014 WL 3579745 (C.A.D.C. July 22, 2014).

[8]Because the cases cited by the Defendants are readily distinguishable, the Court need not, and therefore does not, determine whether it believes they were correctly decided.

because the statute challenged by the plaintiffs "impose[d] requirements on third parties irrespective of actions of the Secretary or her agency."

The Defendants in this case have not suggested how anyone could receive a Tax Credit under the ACA without action by the IRS. In addition, pursuant to 42 U.S.C. § 18081, the Secretary of the Department of Health and Human Services, a Defendant in this case, is responsible for determining an individual's eligibility for a Tax Credit and the amount of that Tax Credit; accordingly, if the Plaintiffs are successful in this action they could obtain a judgment enjoining that Defendant from finding any individual eligible for a Tax Credit if they purchased insurance on a Federal Exchange. It therefore appears to the Court that the Plaintiffs have sued all of the necessary parties in this case to permit redressability of their asserted injuries should they ultimately prevail.

### 4. Availability of a Tax Refund Action

In addition to their standing arguments, the Defendants argue with regard to the Plaintiffs' challenge to the Regulation that the Plaintiffs may only make such a challenge by means of a tax refund action; in other words, the Plaintiffs must pay any shared responsibility payment they are assessed by the IRS and then file a suit seeking a refund in order to challenge the validity of that assessment. There is, of course, a statute that prohibits suits to restrain the collection of a tax; pursuant to the Anti-Injunction Act, 26 U.S.C. § 7421(a), "a tax ordinarily may be challenged only in a suit for a refund after it is paid." *Korte*, 735 F.3d at 669. The Defendants acknowledge, as they must, that the Seventh Circuit's holding in *Korte* forecloses any argument (at least before this Court) that this suit is barred by the Anti-Injunction Act. *See* Defendants' Brief at 28 n.6 (Dkt. No. 37 at 38). They nonetheless argue that the fact that a provision of the ACA, 26 U.S.C. § 4980H(d)(3), provides that a shared responsibility payment

made by an employer based upon the receipt of a Tax Credit by its employee is to be refunded if the Tax Credit is later disallowed somehow precludes this action. That reading of § 4980H(d)(3) can be described only as tortured. Of course there must be a mechanism by which an employer who makes a shared responsibility payment because a Tax Credit is allowed can obtain a refund if that Tax Credit is later disallowed. The existence of such a mechanism says nothing about whether an employer can challenge the availability of a Tax Credit—and therefore the likely imposition of a shared responsibility payment—prior to actually making the shared responsibility payment.

### B. Counts II through IV: Assertion that the Employer Mandate as Applied to the Plaintiffs Violates the Tenth Amendment

In Counts II through IV, the Plaintiffs allege that applying the employer mandate and related reporting requirements to States and their political subdivisions violates the Tenth Amendment—either because it is a tax that violates the doctrine of intergovernmental tax immunity or, if it is not a tax, because it "impermissibly interfere[s] with the residual sovereignty of the State of Indiana," Amended Complaint at ¶ 211—and that the reporting requirements are not severable.[9] The Defendants argue that these claims all are barred by the doctrine of *res judicata*, or claim preclusion, because the State of Indiana was a plaintiff in the case that was filed in the United States District Court for the Northern District of Florida and was eventually decided by the Supreme Court under the caption *National Federation of Independent Business v.*

---

[9]The Court disagrees with the Defendants' assertion in their reply brief that the Plaintiffs have waived these claims because they did not address in their response briefs to the instant motion the Defendants' argument that the claims fail on the merits in addition to being precluded by the Florida Litigation. The Defendants' merits argument was very brief and not sufficiently developed to support a ruling in their favor; in addition, the State of Indiana fully addressed the merits in its brief in support of its motion for summary judgment, which was filed very shortly after its response to the instant motion.

*Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*") (collectively referred to as the "Florida Litigation"),

and the claims either were or could have been raised by the State in that case.

The law applicable to federal claim preclusion is well established.

> A party asserting *res judicata* or claim preclusion must establish: (1) identity of
> the claim, (2) identity of parties, which includes those in "privity" with the
> original parties, and (3) a final judgment on the merits. . . .  In order to decide
> whether the two cases involve the same claim, we ask whether they arise out of
> the same transaction.  If they did, whether or not they were actually raised in the
> earlier lawsuit, they may not be asserted in the second or subsequent proceeding.

*Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014) (internal citations and quotation marks

omitted).  As the School Districts were not parties to the Florida Litigation, the Court will

consider the preclusive effect of the Florida Litigation on the State of Indiana first, and then

consider it with regard to the School Districts.

### 1. The Effect of the Florida Litigation on the State of Indiana's Claims

There is no question that the requirements of claim preclusion are satisfied with regard to

the Florida Litigation and the Tenth Amendment claims advanced by the State of Indiana in this

case.  The plaintiffs in that case—including the State of Indiana—alleged the following in Count

Six of their Amended Complaint:

> By imposing new employer healthcare insurance mandates on the Plaintiff States,
> by requiring that they automatically enroll and continue enrollment of employees
> in healthcare plans, by subjecting States to penalties and taxes depending upon
> plan attributes and individual employee coverage decisions, and by burdening the
> States' ability to procure goods and services and to carry out governmental
> functions, the Act exceeds Congress's powers under Article I of the Constitution,
> and interferes in the Plaintiff States' sovereignty in violation of the Ninth and
> Tenth Amendments and the constitutional principles of federalism and dual
> sovereignty on which this Nation was founded.

Amended Complaint at ¶ 90,[10] *Florida v. United States Dept. of Health & Human Servs.*, Case No. 3:10-cv-91 RV/EMT, Dkt. No. 42 (N.D. Fla., May 14, 2010). The district court rejected that claim. *Florida v. United States Dept. of Health & Human Servs.*, 716 F. Supp. 2d 1120, 1151-54 (N.D. Fla. 2010) (granting motion to dismiss Count Six). In the course of briefing the motion to dismiss, the state plaintiffs in the Florida Litigation also "argue[d] that the employer mandate runs afoul of the intergovernmental-tax immunity doctrine." *Id.* at 1154 n.14. The court addressed that argument as follows: "[T]he defendants persuasively respond that the claim has not been pled in the amended complaint and that, in any event, it must fail as a matter of law." *Id.* The Plaintiffs apparently did not appeal that ruling to the Eleventh Circuit. *See Florida v. U.S. Dept. of Health and Human Servs.*, 648 F.3d 1235 (11th Cir. 2011) (appeal of ruling on motion for summary judgment on claims not dismissed). In their petition for writ of certiorari, the state plaintiffs asked the Supreme Court to consider several issues, including:

> Question 2: May Congress treat States no differently from any other employer when imposing invasive mandates as to the manner in which they provide their own employees with insurance coverage, as suggested by *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), or has *Garcia's* approach been overtaken by subsequent cases in which this Court has explicitly recognized judicially enforceable limits on Congress's power to interfere with state sovereignty?

The Supreme Court granted the petition as to several issues; Question 2 was not one of them. Thus the arguments the Plaintiffs wish to make regarding the Tenth Amendment were raised and rejected in the Florida Litigation, and final judgment has been entered in that case.

The State of Indiana argues that they are entitled to a second bite of the apple because "[t]he Supreme Court has observed '[a] general rule that *res judicata* is no defense where

---

[10]A second amended complaint was filed in the Florida Litigation after the district court ruled on the motion to dismiss the first amended complaint; although it contains the same Count Six, that count already had been dismissed and was not revived by its inclusion in the later complaint.

between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation,'" and the Supreme Court's ultimate decision in the Florida case "so altered the legal background of the argument that the State's Tenth Amendment claims should not be precluded here."  State's Response at 23 (Dkt. No. 38 at 14) (quoting *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945)).  This argument has several shortfalls.

First, even assuming such a general rule exists, it does not, on its face, apply here.  There was no change in the law "between the time of the first judgment and the second"; any change in the law that occurred took place during the course of the Florida Litigation itself.  The "first judgment" in this case was the Florida Litigation; nothing has happened *since that litigation concluded* that has altered the relevant law in any way.

Second, it is far from clear that the quoted language from the *State Farm* case is good law, inasmuch as the Supreme Court expressed a contrary conclusion in a far more recent case, noting:  "Nor are the *res judicata* consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."  *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  The parties point to no binding authority on the issue of the interplay between *Federated* and *State Farm*, either from the Supreme Court or the Seventh Circuit, and the Court's own research has revealed none.  With regard to the issue, however, the Court finds the opinion in *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 525 F. Supp. 2d 680, 689-90 (D. Del. 2007), both instructive and persuasive:

> To the extent Ranbaxy relies on a contrary statement by the Supreme Court in [*State Farm*], the Court concludes that *State Farm's* discussion of *res judicata* is dicta, and in any event, *State Farm* has been superseded by *Federated*. *See e.g.*,

> *Forsman v. Chater*, 1996 WL 396718, *1 (9th Cir. July 12, 1996). The Court's
> conclusion is consistent with the prevailing view by courts and commentators
> alike that a change in the law is insufficient to bar the application of *res judicata*.
> *See e.g.*, *Wilson v. Lynaugh*, 878 F.2d 846, 850–851 (5th Cir. 1989), *Precision Air
> Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984) ("The general
> rule in this circuit, and throughout the nation, is that changes in the law after a
> final judgment do not prevent the application of *res judicata* and collateral
> estoppel, even though the grounds on which the decision was based are
> subsequently overruled."); *Barzin v. Selective Service Local Board No. 14*, 446
> F.2d 1382, 1383 (3d Cir. 1971) (recognizing that "a prior decision may serve as
> *res judicata* even if a contrary judicial decision on the legal issues involved
> intervenes between the first and second suits."); *see also* 18 Wright, Miller &
> Cooper, Federal Practice and Procedure: Jurisdiction § 4403 (2d ed. 2002).

*Accord Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008) (citing *Federated*

for the proposition that "there is no 'change of law' or fairness exception to prevent application

of claim preclusion").

Finally, as recognized by the court in *Pfizer*, some courts, even post-*Federated*, "have

recognized an exception to this principle in the case of momentous legal changes invoking

important and fundamental changes in constitutional rights," *Pfizer*, 525 F. Supp. 2d at 690 n.2,

the paradigmatic example perhaps being the Supreme Court's overruling of the separate but

equal doctrine in *Brown v. Board of Education*. Again, the parties cite to, and the Court has

found, no case in which either the Supreme Court or the Seventh Circuit has recognized this

exception, which has logical and equitable appeal but which seems to contradict the Supreme

Court's rejection of either a "simple justice" or "public policy" exception to *res judicata* in

*Federated*:

> The Court of Appeals also rested its opinion in part on what it viewed as "simple
> justice." But we do not see the grave injustice which would be done by the
> application of accepted principles of *res judicata*. "Simple justice" is achieved
> when a complex body of law developed over a period of years is evenhandedly
> applied. The doctrine of *res judicata* serves vital public interests beyond any
> individual judge's *ad hoc* determination of the equities in a particular case. There
> is simply no principle of law or equity which sanctions the rejection by a federal
> court of the salutary principle of *res judicata*. . . . We have stressed that the

doctrine of *res judicata* is not a mere matter of practice or procedure inherited
from a more technical time than ours. It is a rule of fundamental and substantial
justice, of public policy and of private peace, which should be cordially regarded
and enforced by the courts.

452 U.S. at 401 (citations and internal quotation marks omitted).

In any event, the Court is unconvinced by the State of Indiana's argument that the

Supreme Court's decision in *NFIB* was the type of "momentous legal change" in Tenth

Amendment jurisprudence that would justify overlooking the preclusive effect of the Florida

Litigation. Principles discussed and applied in *NFIB* are certainly relevant to the Plaintiffs'

claims in this case, and perhaps, as they suggest, the Supreme Court's application of those

principles in that case may support some of the Plaintiffs' arguments in this case, making them

somewhat stronger than they would be but for the *NFIB* decision, but the State has identified no

clear change in the law such that there are arguments available to them now that were

unavailable to them in the Florida Litigation.[11] There is a difference between a Supreme Court

holding that gives a litigant better ammunition than it had before and the type of "momentous

legal changes invoking important and fundamental changes in constitutional rights" that might

justify an exception to *res judicata*. At most, the State has shown that the former might be

present here.

There are three aspects of the State of Indiana's argument that remain to be addressed.

First, the State argues at length that "[c]ase law involving the Bipartisan Campaign Reform Act

of 2002," another complex federal statute, lends support to its position that claim preclusion

should not apply here. Specifically, the State notes that *Republican Nat'l Comm'n v. Fed.*

*Election Comm'n*, 698 F. Supp. 2d 150, 156 (D.D.C. 2010), *aff'd*, 130 S. Ct. 3544 (2010)

---

[11]Again, the Court notes that not only could the State of Indiana have asserted its
intergovernmental tax immunity argument in the Florida Litigation; it did so. The same is true of
its argument that *Garcia* should be overruled.

("*RNC*") was decided on the merits, in spite of the Defendants' argument that the claims were barred by previous litigation between the same parties that ultimately was concluded by a Supreme Court ruling in 2003. The State surmises that the reason the district court ruled on the merits, rather than dismissing the case on *res judicata* grounds, is that the Supreme Court's intervening decision in *Citizens United v. Federal Election Comm'n*, 588 U.S. 310 (2010), constituted a change in the applicable law. This argument is without merit. The court in *RNC* expressly noted in a footnote that it *did not consider* the defendants' claim preclusion argument in any way. *RNC*, 698 F. Supp. 2d 150, 163 n.7 (D.D.C. 2010) ("Because we find that all of plaintiffs' claims are foreclosed on their merits, we need not consider the FEC's argument that some of the claims are also barred by *res judicata*."). As the district court noted in *RNC*, *res judicata* is not jurisdictional. District judges by and large are practical beings; if a case can be decided in favor of a defendant as easily on the merits as on *res judicata* grounds, the court often will simply address the merits. There is simply nothing in the district court's opinion in *RNC* that suggests that the court did anything other than determine that a decision on the merits— something which was accomplished in a relatively brief opinion that was summarily affirmed by the Supreme Court—was just as easy, or perhaps easier, than examining what occurred years earlier in separate litigation in order to address the claim preclusion issue.

Second, the State argues that claim preclusion should not apply because of "factual changes" that have occurred, arguing that claim preclusion "'does not bar parties from bringing claims based on material facts that were not in existence when they brought the original suit.'" State's Response at 26 (Dkt. No. 38 at 37) (quoting *Apotex*, 393 F.3d 210, 218 (D.C. Cir. 2004)). The key word is *material*. None of the facts material to whether the employer mandate violates the Tenth Amendment have changed. In the Florida Litigation, as summarized by the district

court, the plaintiffs argued that the employer mandate "require[d] the states, in their capacities as large employers, to offer and automatically enroll state employees in federally-approved insurance plans or else face substantial penalties and assessments." *Florida*, 716 F. Supp. 2d at 1151. The court expressly assumed that it was true that "the employer mandate will be costly and burdensome to the states in their capacity as large employers," *id.*, and nonetheless found that it did not violate the Tenth Amendment. The fact that the parties are better able to quantify the cost and burdens they face and have taken steps to minimize them would not have changed the Tenth Amendment analysis in any way, and therefore it is not a material change.

Finally, the State of Indiana argues that claim preclusion does not apply to its challenge in Count III to the ACA's employer reporting requirements because, it argues, the reporting requirements were not challenged in the Florida Litigation. As the Defendants correctly point out, that assertion is incorrect. The amended complaint in the Florida Litigation asserted that there were three "new requirements" imposed by the ACA that interfered with the state plaintiffs' "ability to perform government functions": (1) the requirement to enroll employees working 30 or more hours a week into health insurance plans; (2) the imposition of substantial penalties and taxes "for State employees who obtain subsidized insurance from an exchange instead of from a State plan, or if the State plan offers coverage that is either too little or too generous as determined by the federal government"; and (3) "[n]ew tax reporting requirements prescribed by the [ACA] [that] also will burden the Plaintiff States' ability to source goods and services as necessary to carry out government functions." Amended Complaint at ¶ 48, Case No. 3:10-cv-91 RV/EMT, Dkt. No. 42 (N.D. Fla.) (May 14, 2010). In Count Six, the Plaintiff States alleged that the ACA violated the Ninth and Tenth Amendments by "burdening the States' ability to procure goods and services to carry out government functions." *Id.* at ¶ 90. Therefore,

the issue of whether the reporting requirements violated the Tenth Amendment was squarely raised in the Florida Litigation.  That it apparently was not expressly addressed in the State Plaintiffs' brief in opposition to the motion to dismiss independently of the two other parts of the employer mandate raised in the amended complaint is irrelevant to the question of whether it was at issue in the case.

For the reasons set forth above, the Court finds that the State of Indiana is barred by *res judicata* from arguing that the employer mandate—including the reporting requirements— violates the Tenth Amendment.  Accordingly, the motion to dismiss is **GRANTED** with regard to Counts II, III, and IV as to the State of Indiana.[12]

### 2. *The Effect of the Florida Litigation on the School Districts' Claims*

The School Districts were not parties to the Florida Litigation; therefore, the judgment in that case can have preclusive effect on the School Districts' claims in this case only if they were in privity with the State of Indiana.   This requires a "fact-specific analysis," and "whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions."   *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) (citations omitted).

The cornerstone of the Defendants' argument that there is privity between the School Districts and the State of Indiana with regard to the Florida Litigation is their assertion that "[t]he school districts' Tenth Amendment rights, if any, derive from those of the state."  Defendants' Brief at 30 (Dkt. No. 37 at 40).  The Defendants cite to no authority for this proposition, and in light of the holding in *Bond v. United States*, 131 S. Ct. 2355 (2011), it is not clear to the Court

---

[12]The Court notes that the School Districts have moved to join the State of Indiana's motion for summary judgment regarding these counts.  That motion (Dkt. No. 49) is **GRANTED**.  In the event that the Court considers the merits of these claims as advanced by the School Districts, the Court will consider the relevant arguments made by the State of Indiana in its briefs.

that it is a correct statement of the law.  The Court believes that this issue would benefit from oral argument—to specifically address the import, if any, of the principles set forth in *Bond*, and also to more fully address the arguments made in the parties' briefs.  Accordingly, the motion to dismiss is **DENIED** on this issue, in favor of deciding the issue in conjunction with the pending motion for summary judgment.  In addressing this issue in its summary judgment ruling, the Court will consider the Defendants' briefs in support of the instant motion and the School Districts' brief in opposition to it.

### C.  Count V

Finally, in Count V, the Plaintiffs allege that the Federal Government is estopped from imposing any assessable payments on employers for noncompliance with the employer mandate in 2014 because the Department of the Treasury and President Obama have announced that its implementation will be delayed until 2015.  The Court agrees with the Defendants that there is no case or controversy with regard to this issue; there is simply no suggestion that the Defendants will attempt to enforce the employer mandate with regard to actions taken or not taken by the Plaintiffs (or any employer) in 2014.  Accordingly, the motion to dismiss Count V is **GRANTED**.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, the Defendants' motion to dismiss (Dkt. No. 36) is **DENIED** as to Count I and **GRANTED** as to Count V.  As to the remaining Counts, the motion is **GRANTED** as to the State of Indiana and **DENIED** as to the Plaintiff School Districts; however, the Court will consider the arguments raised by the Defendants as to the School Districts in its ruling on the pending motions for summary judgment.  The School Districts' motion to join in the State of Indiana's motion for summary judgment (Dkt. No. 49) is

**GRANTED** and the arguments made in the State of Indiana's summary judgment briefs are incorporated by reference into the School Districts' summary judgment briefs.

Finally, the Plaintiffs' motion for consolidated oral argument (Dkt. No. 50) is **DENIED**, inasmuch as the Court determined that oral argument was not necessary to resolve the issues addressed herein. However, the Court believes that oral argument on the pending motions for summary judgment will be helpful. That argument will be heard on **October 9, 2014, at 9:30 a.m.**, in Room 202, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. The parties shall confer and file a notice by **August 28, 2014,** in which they inform the Court (1) how much time they believe they will need for oral argument; and (2) the order in which they believe the parties should present their arguments.

SO ORDERED:  08/12/2014

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification