UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STATE OF INDIANA, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|      vs. | ) Cause No. 1:13-cv-1612-WTL-MPB |
| | ) |
| INTERNAL REVENUE SERVICE, et al., | ) |
| | ) |
|    Defendants. | ) |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on three motions for summary judgment, one filed by Plaintiff the State of Indiana (Dkt. No. 44) ("the State"), one filed by the remaining Plaintiffs (hereinafter referred to as "the Plaintiffs" or "the School Districts") (Dkt. No. 46), and one filed by the Defendants (Dkt. No. 61). The motions are fully briefed, and the Court, having considered the parties' filings[1] and oral arguments, now **GRANTS** the Defendants' motion and **DENIES** the Plaintiffs' motions for the reasons set forth below.

**I. BACKGROUND**

The Amended Complaint in this case contains five counts. The parties agree that Count I was fully resolved in the Defendants' favor by the Supreme Court's ruling in *King v. Burwell*, 135 S. Ct. 2480 (2015). *See* Dkt. No. 91 at 2. Count V has been dismissed by the Court. *See* Dkt. No. 77. In Count II, the Plaintiffs assert that applying the provisions of the Patient

---

[1]This case originally was filed by the State and the School Districts, which are thirty-nine of the state's school corporations. The Court dismissed certain of the State's claims after the parties had filed their summary judgment briefs; however, in making this ruling, the Court has considered all of the summary judgment briefs filed by the State, inasmuch as the School Districts sought and were granted leave to join in the State's motion for summary judgment. *See* Dkt. No. 77.

Protection and Affordable Care Act ("ACA") that are commonly referred to as the "employer mandate,"[2] 26 U.S.C. § 4980H ("ACA § 1513"), to the School Districts, as political subdivisions of the State of Indiana, violates the Tenth Amendment, either because it is a tax that violates the doctrine of intergovernmental tax immunity or, if it is not a tax, because it impermissibly interferes with the residual sovereignty of the State of Indiana. The Plaintiffs make the same allegation in Count III with regard to 26 U.S.C. § 6056 ("ACA § 1514"), which imposes certain reporting and certification requirements on employers. They assert in Count IV that the reporting requirements cannot be severed from the employer mandate.

## II. **DISCUSSION**

In a previous ruling, the Court dismissed Counts II, III, and IV as to the State, finding that its claims were barred by the doctrine of *res judicata*, or claim preclusion. Dkt. No. 77. That ruling, which the Court incorporates herein by reference, was based on the fact that the State was a plaintiff in a case that was filed in the United States District Court for the Northern District of Florida and was eventually decided by the Supreme Court under the caption *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ("*NFIB*") (collectively referred to as the "Florida Litigation"), and the claims in Counts II, III, and IV in this case were raised or could have been raised by the State in that case.

While the School Districts were not parties in the Florida Litigation, the Defendants argued in their motion to dismiss that the judgment in that case nonetheless barred the School

---

[2]Pursuant to the employer mandate, a large employer (as defined by the ACA) is required either to offer health insurance that provides "minimum essential coverage" to all of its full-time employees (as defined by the ACA) or be subject to a "shared responsibility payment" for failing to do so. The Plaintiffs allege that if they are subject to the employer mandate, they will be required to provide health insurance to employees to whom they otherwise would not offer it and/or be obligated to make shared responsibility payments for some of their employees.

Districts' claims in this case because the School Districts were in privity with the State. The Court deferred consideration of the nonparty preclusion issue to the summary judgment stage and asked the parties to address it at oral argument, which they did. The Court therefore turns to that issue now.

There is no question that "'[u]nder *res judicata,* a final judgment on the merits bars further claims by parties *or their privies* based on the same cause of action.'" *Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014) (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979)) (emphasis added). In *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Court set forth six categories of exceptions to "the general rule that a litigant is not bound by a judgment to which she was not a party." The Court described the exception that is relevant to this case as follows:

> [N]onparty preclusion may be justified based on a variety of pre-existing "substantive legal relationships" between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. These exceptions originated as much from the needs of property law as from the values of preclusion by judgment.

*Id.* at 894 (citations and internal quotation marks omitted). Thus, if the School Districts and the State have the type of "substantive legal relationship" that would justify the application of nonparty preclusion, the judgment in the Florida Litigation is binding on the School Districts.

With regard to the claims dependent on the intergovernmental tax immunity doctrine, that issue is easily resolved.

> [U]nder current intergovernmental tax immunity doctrine the States can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals. A tax is considered to be directly on the Federal Government only when the levy falls on the United States itself, *or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities*. The rule with respect to state tax immunity is essentially the same, except that at least some nondiscriminatory federal taxes can be collected

3

      directly from the States even though a parallel state tax could not be collected
      directly from the Federal Government.

*South Carolina v. Baker*, 485 U.S. 505, 523 (1988) (emphasis added) (citations and footnote omitted).[3] Thus, by asserting that the intergovernmental tax immunity doctrine applies to them, the School Districts are asserting that a tax on them is a tax directly on the State which, by definition, means that in that context they are "so closely connected to the [State] that the two cannot realistically be viewed as separate entities." *See id.* If that is, in fact, their relationship to the State in the relevant context,[4] then they clearly have the type of "substantive legal relationship" with the State that would justify applying nonparty preclusion to them. Thus, the judgment in the Florida Litigation operates as a bar to the School Districts' claims in this case that arise under the intergovernmental tax immunity doctrine.

      With regard to the School Districts' alternative argument—that if the employer mandate and reporting requirements are not a tax, but rather were enacted pursuant to Congress's

---

[3]As this quote from *Baker* makes clear, the Plaintiffs' blanket statements in their briefs such as "the Federal Government cannot exercise direct taxing authority over the sovereign states," Dkt. No. 45 at 29, "[t]he Court in *Baker* explicitly held that the Constitution also forbids direct taxation of one level of government by another," Dkt. No. 65 at 33, "[t]he Federal Government cannot directly tax the States, and the States cannot directly tax the Federal Government, and neither *Baker* nor any other case holds to the contrary," Dkt. No. 65 at 34, and "[u]ltimately, there is no Tax Clause authorization to levy direct taxes on the States," Dkt. No. 65 at 35, go too far, as they ignore the fact—stated explicitly in *Baker*—that there are instances in which the federal government may directly tax a state. Indeed, the Supreme Court in *Baker* expressly noted that "at least some state activities have always been subject to direct federal taxation" but concluded that "[w]e need not concern ourselves here . . . with the extent to which, if any, States are currently immune from direct federal taxation." *Baker*, 485 U.S. at 523 n.14. Indeed, the Plaintiffs themselves recognize that "reciprocal immunity is not precisely symmetrical." Dkt. No. 65 at 33.

[4]The School Districts point to the fact that their interests are at times at odds with those of the State as support for their argument that they are not in privity with the State. However, they clearly may be in privity with the State for some purposes but not others. If they are not in privity with the State for purposes of the application of the intergovernmental tax immunity doctrine, then that doctrine cannot bar taxation of them by the United States.

authority under the Commerce Clause, they violate the Tenth Amendment—the analysis is somewhat different. A governmental entity need not be a "state" to be entitled to challenge a federal statute on Tenth Amendment grounds. *See Printz v. United States*, 521 U.S. 898, 931 (1997) (noting the Supreme Court's refusal to apply "the distinction in our Eleventh Amendment jurisprudence between States and municipalities . . . to the question of whether a governmental entity is protected by the Constitution's guarantees of federalism, including the Tenth Amendment") (citing, *inter alia*, *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985) (resolving Tenth Amendment issues in suit brought by local transit authority)). The Court need not decide whether claim preclusion is nonetheless appropriate with regard to these alternative claims, however, because the holding in *Garcia* compels this Court to find in favor of the Defendants on those claims on their merits.

The Plaintiffs urge the Court not to apply the holding of *Garcia* to their Tenth Amendment claims, arguing that *Garcia*'s "central premise has been explicitly jettisoned by the Supreme Court, and it no longer accurately states the law." Dkt. No. 45 at 33. As recognized by the Plaintiffs, however, only the Supreme Court can overrule its own precedent, and the Supreme Court has not overruled *Garcia*. *See* Dkt. No. 45 at 33 n.6 ("The law would be clearer if the Supreme Court expressly overruled *Garcia*. The issue is mentioned here to preserve it on appeal."). And, in any case, the Court does not find persuasive the Plaintiffs' arguments that the Supreme Court's holdings in several cases decided after *Garcia*—*New York v. United States*, 505 U.S. 144 (1992), *Printz*, 521 U.S. 898, and *NFIB*, 567 U.S. 519—demonstrate that *Garcia* is no longer good law.

In *Garcia*, the Supreme Court held that the application of the minimum wage and overtime provisions of the Fair Labor Standards Act to the states was a permissible exercise of

5

Congress's power under the Commerce Clause. In so ruling, the Court overruled *National League of Cities v. Usery*, 426 U.S. 833 (1976), in which it had reached the opposite conclusion, finding that the principle expressed in that case—that whether states were immune from federal regulation depended on whether the regulation involved a "traditional government function"— was "not only unworkable but [was] also inconsistent with established principles of federalism and, indeed, with those very federalism principles on which *National League of Cities* purported to rest." *Garcia*, 469 U.S. at 531. Rather, the Court held that

> we continue to recognize that the States occupy a special and specific position in our constitutional system and that the scope of Congress' authority under the Commerce Clause must reflect that position. But the principal and basic limit on the federal commerce power is that inherent in all congressional action—the built-in restraints that our system provides through state participation in federal governmental action. The political process ensures that laws that unduly burden the States will not be promulgated. In the factual setting of these cases the internal safeguards of the political process have performed as intended.

*Id.* at 556. The Court further noted that "[t]hese cases do not require us to identify or define what affirmative limits the constitutional structure might impose on federal action affecting the States under the Commerce Clause." *Id.*

In the cases cited by the Plaintiffs as being irreconcilable with *Garcia*, the Supreme Court identified one such affirmative limit. Each of those cases involved "federal legislation that commandeer[ed] a State's legislative or administrative apparatus for federal purposes" that was found to be unconstitutional because "'the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions.'" *NFIB*, 567 U.S. at 577 (quoting *New York,* 505 U.S. at 162). As described in *NFIB*, *Printz* involved "striking down federal legislation compelling state law enforcement officers to perform federally mandated background checks on handgun purchasers," while *New York* involved "invalidating provisions of an Act that would compel a State to either take title to nuclear waste

6

or enact particular state waste regulations." *NFIB*, 567 U.S. at 577. In *NFIB*, the Supreme Court held that the Medicaid expansion provisions of the ACA violated this rule, reiterating that "Congress may not simply 'conscript state [agencies] into the national bureaucratic army.'" *Id.* at 585 (quoting *FERC v. Mississippi,* 456 U.S. 742, 775 (1982) (O'Connor, J., concurring in judgment in part and dissenting in part)). This fundamental restriction on Congress's authority under the Commerce Clause simply was not at issue in *Garcia*.

The Seventh Circuit recognized this distinction in *Travis v. Reno*, 163 F.3d 1000, 1003 (7th Cir. 1998). In *Travis*, the court noted that in *Garcia* and other cases the Supreme Court held that "states may be subjected to regulation when they participate in the economic marketplace"[5] as long as the regulations were applied to public and private spheres neutrally, but that

> [a]longside the prohibition of discrimination against the states is a rule that remains absolute, a genuine "immunity." Congress may not "commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288, 101 S. Ct. 2352, 69 L.Ed.2d 1 (1981). See also *Printz*, 521 U.S. 898; *New York*, 505 U.S. 144; *FERC v. Mississippi*, 456 U.S. 742, 762-66 (1982). When Congress enacted legislation requiring states to pass laws regulating nuclear waste—and to pay the steep penalty of taking title to all waste within their borders if they failed to comply—the Court replied (in *New York*) that the national government simply may not direct the states to use their legislative powers to regulate private conduct. *Printz* adds that the same principle applies to the federal government's direction that a state's executive branch enforce federal rules.

*Id.* It is clear that the provisions of the ACA at issue in this case do not implicate the absolute rule recognized in *Travis*. Rather, they constitute the type of non-discriminatory regulation applied to the states and private entities alike that *Garcia* held to be constitutionally permissible.

---

[5]The Plaintiffs argue that *Garcia*'s holding should be limited to federal labor law, specifically to statutes codified in Title 29. The Plaintiffs point to nothing in *Garcia* that suggests that the Supreme Court intended its holding to be so limited and, in fact, as the Plaintiffs recognize, the Seventh Circuit applied *Garcia* outside of the labor law context in *Travis*.

7

Accordingly, the Court finds that the holding of *Garcia* dictates a finding that if ACA Sections 1513 and 1514 are properly examined as an exercise of Congressional power under the Commerce Clause, rather than as a tax, their application to the School Districts is not barred by the Tenth Amendment.

### III. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment (Dkt. No. 61) is **GRANTED** as to all Plaintiffs with regard to Count I and **GRANTED** as to Counts II and III as to the School Districts. In light of this holding, Count IV of the Amended Complaint, which asserts a severability argument that applies only if "the Court rejects Plaintiffs' challenge under Count II but agrees with Plaintiffs on Count III," Dkt. No. 22 ¶ 219, is **MOOT**. The Plaintiffs' motions for summary judgment (Dkt. Nos. 44 and 46) are **DENIED**.

SO ORDERED: 2/14/18

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification